FRAZIER v. BEARD, 1996 NCBC 1

| | |
|---|---|
| STATE OF NORTH CAROLINA | IN THE GENERAL COURT OF JUSTICE |
| | SUPERIOR COURT DIVISION |
| COUNTY OF CATAWBA ) | 94-CVS-2362 |

RICHARD FRAZIER, GLENDA )
FRAZIER, ESCHER, INC., LISA )
DAWN FRAZIER-RADER, SHERRI )
MARIE FRAZIER, and MICHAEL D. )
FRAZIER )
)
     Plaintiffs )
)
     v. )
)
TRUITT J. BEARD, DOROTHY B. )     **ORDER AND OPINION**
BEARD, BARRY B. HARBINSON, )
BARBARA P. HARBINSON, )
JOANNAH B. HARBINSON, BRUCE )
NELSON TEAGUE and DONNA E. )
TEAGUE-YOUNG as personal )
representatives of the Estate of J Bruce )
Teague, DAVID B. LINGAFELT, )
JANET W. LINGAFELT, VASSIE B. )
BALKCUM, and BEATRICE K. )
BALKCUM, )
)
     Defendants )
)
)

{1} This matter is before the Court on three separate motions for summary judgment filed by three groups of defendants, Barry B. Harbinson, Barbara P. Harbinson, and Joannah B. Harbinson ("the Harbinsons"); David B. Lingafelt and Janet W. Lingafelt ("the Lingafelts"); and Vassie B. Balkcum and Beatrice K. Balkcum ("the Balkcums"). A hearing was held on July 11, 1996 in Catawba County. For the reasons set forth below, the Court grants each motion for summary judgment.

     *J. Michael Mulvaney and John R. Buric of James, McElroy & Diehl and Martin C. Pannell of Martin & Monroe Pannell, attorneys for plaintiffs.*

     *K. Dean Black of Kennedy & Black and Doris R. Bray of Schell Bray Aycock Abel & Livingston attorneys for defendants Barry B., Barbara P. and Joannah B. Harbinson, and David B. and Janet W. Lingafelt and Eloise D. Bradshaw of Patrick, Harper & Dixon attorney for defendants Vassie B. and Beatrice K. Balkcum.*

## FACTUAL BACKGROUND

{2} This case arises out of the sale of common stock in Citizens Savings Bank, SSB, Inc. ("Citizens") by plaintiffs Richard Frazier, Glenda Frazier, Escher, Inc. (owned by the Fraziers), and Lisa Dawn Frazier-Rader. As of August 1, 1992, plaintiffs collectively owned 43,945 shares of stock in Citizens. in a series of transactions in the fall of 1992, they sold all those shares for prices ranging between $12.00 and $13.80 per

share. Defendants were purchasers of a portion the shares sold in some of those transactions. In January of 1993, Citizens announced that it was merging with BB&T Financial Corp. ("BB&T"), and the value of the shares purchased by defendants immediately increased to approximately $31.00 per share. The following is a summary of the transactions pertinent to these motions:

| Purchaser | No. Shares | Price | Transaction Date | Bank Intermediary |
|-----------|-----------|-------|------------------|-------------------|
| Harbinsons | 262 | $12.00 | September 23, 1992 | Citizens Savings |
| Harbinsons | 1,504 | $13.30 | November 5, 1992 | Citizens Savings |
| Lingafelts | 12,000 | $13.30 | November 5, 1992 | Citizens Savings |
| Lingafelts | 14,240 | $13.80 | November 25, 1992 | Peoples Bank |
| Balkeums | 10,075 | $13.80 | November 25, 1992 | Peoples Bank |

{3} Plaintiffs seek to recover from defendants at least a portion, if not all, of the over $662,000 gain attributable to the transactions set forth above. They seek recovery from the Harbinsons and the Lingafelts on four legal theories: (1) violation of the North Carolina Securities laws, (2) common law fraud, (3) negligent misrepresentation, and (4) unjust enrichment. Each of the first three causes of action are based solely on vicarious liability for the acts of William Bradshaw, an official of Citizens. The claim against the Balkcums is based solely on unjust enrichment. Each cause of action must be examined in light of the individual transaction, the role of Bradshaw in the transaction, and the defendants involved. The claims against the other defendants, the Teagues and the Beards, have been resolved and the claims of Sherri and Michael Frazier have been removed from the dispute. J. Bruce Teague and Truitt Beard were both members of the Board of Directors of Citizens.

{4} Bradshaw had worked for Citizens since 1950. Until 1982, Citizens had been a mutual savings and loan association. At that time, it converted to a stock company, and the Fraziers, collectively, became the largest shareholder in the new bank, holding approximately 5% of the outstanding shares. The stock of Citizens was not widely traded, and no brokerage house made a market in the stock. Trades were small in size. Almost from the beginning, Citizens began maintaining a list of people who were interested in buying or selling their Citizens stock. The person at Citizens responsible for maintaining that list in 1992 was Bradshaw, who was senior vice president and secretary of the corporation. Bradshaw's procedure for handling inquiries concerning buying and selling stock was not disputed and is set forth in his affidavit. He stated:

> 5. It was my procedure, upon receiving a call from a person wishing to sell stock, to write down his name, the number of shares he wished to sell and the price at which he wished to sell. If someone called wanting to purchase stock, I recorded his name, the number of shares he wished to purchase, and the maximum price he wished to pay, if that information was given to me. On occasion, potential purchasers called and asked if I would let them know when any shares became available and did not indicate a price. I recorded those names also. If asked by a potential buyer or potential seller, I gave information on those recent trades of Citizens, stock known to me, including the number of shares and the price per share. If I was asked, I also gave the book value of the stock as indicated by the last quarterly report. I did not advise any potential seller on a price to ask, nor did I advise any potential buyer on what price to pay. I did not disclose any confidential information about Citizens or its potential customers.

> 6. After receiving an inquiry from an individual desiring to sell stock, my procedure was to contact persons on the buying list in the order they had contacted me. If the seller's asking price was greater that [sic) the price a potential buyer had indicated he would pay, I skipped over that individual to the next name on the buyer list. I told each potential buyer I called how many shares of stock were available and the price per share set by the seller. If the potential buyer was not

willing to pay the potential seller's price, I called the next person on the list. I would not call the potential seller and ask if he was willing to come down on his price. I never negotiated any term of any purchase or sale on behalf of the parties. If the potential buyer indicated he wished to purchase the shares at the price requested by the potential seller, he was instructed to bring the purchase funds to Citizens. The buyer's funds were deposited in a special escrow account at Citizens which was solely for stock transactions. The seller was instructed to bring the endorsed stock certificate to Citizens. When the purchaser's check cleared, the funds were disbursed to the seller, and the stock certificate was sent to First Union National Bank, as transfer agent, for transfer to the purchaser. Citizens never charged a fee for these ministerial services.

7. My activities in assisting with share transfers were limited to those set forth above. I did not solicit sales or purchases of stock, negotiate a price for the stock on behalf of either party, attempt to persuade either party to meet the other's price, urge either party to buy or sell, or act as agent for either party. My role was limited to conveying information about the availability of stock and to providing ministerial services to facilitate the exchange of money and the stock after the parties themselves reached an agreement. These activities were performed by me solely in my role as an officer and employee of Citizens.

{5} With respect to the sales to the Harbinsons and the Lingafelts which involved Bradshaw, it is undisputed that none of the parties to the transaction knew who the other parties were until long after the transactions were completed. The Harbinsons and the Lingafelts were on Bradshaw's list of potential purchasers at times when the Fraziers offered stock for sale. Their purchases were handled in accordance with the procedure set forth above.

{6} With respect to the sales to the Lingafelts and the Balkcums on November 25, 1992, it is undisputed that neither Citizens nor Bradshaw performed any duties or services in connection with the transaction. The ministerial services typically performed by Bradshaw were handled by Peoples Bank in Newton, North Carolina. Bradshaw had nothing to do with these transactions.

{7} On their face, the transactions between plaintiffs and defendants appear to be straightforward stock sales in which one party makes a regrettable decision and the other makes a fortuitous one, depending on which direction the stock moves after the transaction is complete.

{8} The fact situation in this case is more complicated because Richard Frazier was aware of rumors in the community that Citizens was a target for acquisition by a larger bank such as BB&T or Southern National. Accordingly, when he first considered selling any of the family holdings in Citizens, he approached Bradshaw and specifically inquired about whether merger negotiations were ongoing which would result in Citizens being merged into a larger bank. Bradshaw denied the existence of such merger negotiations. Before each of the subsequent transactions in which Bradshaw was involved, Frazier made similar inquiries with respect to merger negotiations and received similar responses from Bradshaw. Frazier went to Citizens before the November 25, 1992 closing at Peoples Bank and inquired of Richard McGee, a Citizens employee, if any merger negotiations were ongoing, and McGee denied the existence of any merger negotiations. Frazier also talked to local officials of Southern National and BB&T during the fall and was told that both banks were interested in acquiring banks like Citizens. At the November 25, 1992 closing, the parties were present. Frazier was aware of rumors of merger possibilities and mentioned them to the Lingafelts and the Balkcums at the closing.

{9} In fact, it is undisputed that during the summer and fall of 1992, Citizens' officers and directors were meeting with investment bankers; considering options including mergers and sales of the bank; and negotiating with prospective suitors, including BB&T, Southern National, and Centura. The directors had even rejected an October 5, 1992 offer from Southern National valuing the stock at $19.00 per share. For purposes of this motion, the Court assumes that Bradshaw's statements were incorrect, misleading, and

material to the Fraziers' decision to sell and that the Fraziers relied upon the statements in making the decision to sell.

{10} It is also undisputed that no definitive merger agreement had been signed at the time any of the stock transactions at issue took place. No agreement was reached until after November 25, 1992.

{11} It is also undisputed that not one of the defendants had any knowledge of the statements made by Bradshaw or McGee. Nor is there any direct evidence in the record that any defendant knew of the merger negotiations. Each has denied under oath having any such knowledge. Plaintiffs allege in paragraph 52 of the complaint: It is specifically *not alleged that Defendants personally made any misstatements of fact to the Plaintiffs or omitted to state a material fact.* (Emphasis added.) *See also* Compl. paras. 61, 66.

## BASIS FOR SUMMARY JUDGMENT

## UNJUST ENRICHMENT

{12} Based upon the foregoing undisputed facts, plaintiffs assert a claim for unjust enrichment against all three sets of defendants. While the same general principles of law apply to all three unjust enrichment claims, there are factual nuances with respect to each claim that warrant discussion.

{13} With respect to the Harbinsons, plaintiffs concede that they were totally innocent purchasers with (1) no knowledge that Bradshaw made any statements, and (2) no knowledge that there were any merger negotiations ongoing. To permit plaintiffs to recover for unjust enrichment under such circumstances would wreak havoc with our commercial system. Any purchaser or seller could sue for unjust enrichment based upon allegations that he or she made a bad decision in reliance on misleading information supplied by a nonparty to the transaction.

{14} With respect to the Lingafelts, there is no evidence in the record to support a finding that they knew of any statements made by Bradshaw or McGee, and they have denied such knowledge under oath. Plaintiffs concede in paragraph 52 of the complaint that the Lingafelts did not omit any statement of material fact in connection with their purchases. However, plaintiffs argue that the Lingafelts are in a different position than the Harbinsons because of a separate transaction between the Lingafelts and Wayne Dellinger ("Dellinger"), a member of the Board of Directors of Citizens. Dellinger was a member of the Executive Committee of the Board and was thus aware of the merger negotiations. In October of 1992, the Lingafelts resold to Dellinger, at Dellinger's request, 4,000 shares of Citizens stock which they had previously purchased from him at times when Dellinger needed money. The purchase price was $13.30 a share. Dellinger testified that the Lingafelts were not happy about reselling the stock, but felt obligated to do so. Mr. And Mrs. Dellinger and the Lingafelts were friends. The purchase price was paid by an unsecured demand note at 8% interest. It is unclear what position the plaintiffs are now taking with respect to the significance of this transaction. To the extent they are arguing that they are entitled to have a jury decide if the Lingafelts were unjustly enriched simply because of the existence of the October transaction with Dellinger, such position is not meritorious. The fact that the Lingafelts sold stock in October for $13.30 a share which later turned out to be worth $31.00 per share is hardly grounds for submission of an unjust enrichment claim with respect to the November purchases. To the extent plaintiffs are abandoning their concession in the complaint that the Lingafelts did not know of the merger negotiations and seek to avoid summary judgment on an inference of such knowledge from the Dellinger transaction, their position is not meritorious.

{15} The Lingafelts have denied under oath having any knowledge of the merger negotiations. There is no evidence in the record to support any finding that the October transaction between Dellinger and the Lingafelts was connected in any way with the November transactions between the Lingafelts and the Fraziers. The Fraziers' stock was not even available at the time. If plaintiffs are arguing that the Dellinger/Lingafelt transaction in October would permit a jury to draw an inference that the Lingafelts knew about the merger negotiations when they purchased the Fraziers' stock on November 5 and November 25, such an inference is insufficient to withstand summary judgment. It would require the jury to find that the Lingafelts made a gift to Dellinger in October by knowingly reselling him stock at less than true value.

There is no evidence in the record to support any finding that either Dellinger or the Lingafelts knew that other stock, particularly the Fraziers' stock, would be available and somehow agreed that Dellinger would see that the Lingafelts could purchase it at the same price Dellinger paid to repurchase his stock. Such a theory is based on pure speculation without any support in the record and is directly contrary to all the sworn testimony. An implausible inference contrary to sworn testimony may not be used to defeat summary judgment. The analysis here is similar to the decision to be made on a Rule 50 motion for directed verdict. A jury is permitted to draw only those inferences of which the evidence is reasonably susceptible and may not be permitted to resort to speculation. A mere scintilla of evidence is not enough to create an issue. *Ayers v. Pastime Amusement Co.,* 283 F. Supp. 773, 793 (D.C.S.C. 1968). Accordingly, the Lingafelts are in no different position than the Harbinsons with respect to the unjust enrichment claim. They are innocent purchasers for value.

{16} With respect to the Balkcums, it is undisputed that they did not know of any statements made by Bradshaw or McGee. Their transaction was handled at Peoples Bank, and they did not even know Bradshaw or McGee. There is no evidence in the record to support a finding that they knew of the merger negotiations, and they have denied such knowledge under oath. Rather, plaintiffs argue that the Balkcums purchased their stock on the basis of a recommendation from the Lingafelts, and therefore their purchase is tainted to the same degree as the Lingafelts' purchases. Having found that the argument relied upon by the plaintiffs with respect to the Lingafelts is insufficient to defeat summary judgment, the claim against the Balkcums also must fail. Furthermore, even if the inference against the Lingafelts was sufficient to defeat summary judgment against the Lingafelts, there is no evidence that the Balkcums knew what the Lingafelts supposedly knew or that they knew about the Dellinger transaction. They are innocent purchasers for value just like the Harbinsons, and a claim for unjust enrichment against them would fail for the same reasons applicable to the claim against the Harbinsons, irrespective of the status of the Lingafelts.

{17} Based upon the preceding analysis, there are three separate reasons for granting summary judgment to all defendants on plaintiffs' unjust enrichment claims. First, to insure stability in commercial transactions, our courts have long held that where an express contract exists between two parties, no cause of action for unjust enrichment may be asserted. *Booe v. Shadrick,* 322 N.C. 567, 369 S.E.2d 554 (1988); *Vetco Concrete Co. v. Troy Lumber Co.,* 256 N.C. 709, 124 S.E.2d 905 (1962); *Rongotes v. Pridemore*, 88 N.C. App. 363, 363 S.E.2d 221 (1988). This case demonstrates the wisdom of that rule.

{18} Second, unjust enrichment is an equitable doctrine designed to provide a remedy where an aggrieved party has no adequate remedy at law. *Jefferson Standard Life Ins. Co. v. Guilford Co.,* 225 N.C. 293, 34 S.E.2d 430 (1945). In this case, the wrong plaintiffs seek to rectify is the alleged inducement to sell their stock at too low a price as a result of the alleged fraudulent, wrongful, and negligent statements of Bradshaw, McGee and Citizens. Plaintiffs not only had a cause of action to rectify that wrong, they pursued it vigorously and received a significant settlement. Plaintiffs sued Bradshaw and Citizens and received a significant sum of money pursuant to a settlement agreement which was filed under seal and reviewed by this Court. The record is unclear with respect to the settlement, if any, with respect to the Beard and Teague defendants, who were both purchasers from the Fraziers and members of the Board of Directors of Citizens. A cause of action for equitable relief may not be asserted against innocent third-party purchasers where sellers have an adequate remedy at law against the alleged wrongdoers.

{19} Third, unjust enrichment is predicated upon the knowing receipt of a benefit by the party against which recovery is sought. In this action, it is clear that the benefit which plaintiffs seek to recover is the difference in the value for which they sold their stock and the value of the stock based upon the merger agreement between Citizens and BB&T signed in January 1993. Defendants could not have knowingly received that benefit because it did not exist at the time of the transactions at issue. There was at best an expectation that some event might occur in the future which would confer a benefit. Such an expectation does not constitute a benefit which may be recovered if and after the expectation is fulfilled. This would be a different case if a definitive merger agreement had been signed at the time of the Fraziers' sales and if there was some proof that defendants knew of the existence of the agreement and did not disclose it. Defendants did not purchase plaintiffs' stock knowing they were getting stock worth $31.00 per share. They took a risk in buying and should not be required to disgorge their profits absent some proof of knowledge on

their part of the benefit they were receiving.

{20} All defendants are entitled to summary judgment on the unjust enrichment claims.

## VICARIOUS LIABILITY

{21} Plaintiffs have also asserted three causes of action against the Harbinsons and the Lingafelts for (1) violation of the North Carolina Securities laws, (2) common law fraud, and (3) negligent misrepresentation. Each of those causes of action is predicated upon vicarious liability for the acts of Bradshaw. No allegation of direct wrongdoing is asserted against either the Harbinsons or the Lingafelts, and their liability is solely dependent upon the existence of an alleged agency relationship between them and Bradshaw. The Court finds that there is no genuine issue of material fact with respect to the relationship between the purchasers of the Fraziers' stock and Bradshaw. The Harbinsons and the Lingafelts are entitled to summary judgment because (1) there was no agency relationship between either the Harbinsons or the Lingafelts and Bradshaw giving rise to liability under these circumstances; and (2) if there was an agency relationship, as a matter of law, plaintiffs elected a remedy against the agent and cannot now pursue the undisclosed principals.

{22} The transactions at issue here are the September 23, 1992, and November 5, 1992 sales. Again, the Court assumes for purposes of this motion that Bradshaw's statements to the Fraziers about the merger negotiations were incorrect, misleading, and material to their decision to sell their stock. It is undisputed that the Harbinsons and the Lingafelts did not know about the statements and did not authorize Bradshaw to make any statements about merger negotiations or any other statement for that matter. It is also undisputed that neither the buyers nor the sellers in these transactions knew the identity of the other parties to the transaction at the time it occurred.

{23} Plaintiffs rely on the case of *B.B. Walker Co. v. Burns Int'l Sec. Servs., Inc.*, 108 N.C. App. 562, 424 S.E.2d 172, *disc. rev. denied*, 333 N.C. 536, 429 S.E.2d 552 (1993). In that case, the Court of Appeals held: "'To be within the scope of [the agency], an [agent], *at the time of the incident*, must be acting in furtherance of the principal's business and for the purpose of accomplishing the duties of his employment.'" *Id.* at 566, 424 S.E.2d at 174 (quoting *Troxler v. Charter Mandala Ctr., Inc.,* 89 N.C. App. 268, 271, 365 S.E.2d 665, 668, *disc. rev. denied*, 322 N.C. 838, 371 S.E.2d 284 (1988)) (emphasis added). Thus, the timing of the alleged statements and the purpose for which they were made are key in each instance. In each case, the statements were made in response to an inquiry from Mr. Frazier, who was trying to decide on behalf of himself or one of the other plaintiffs whether to offer the stock for sale and at what price. Frazier sought the information for his own benefit in making the decision whether to offer the stock for sale to anyone. Bradshaw responded in his capacity as a bank employee, acting for the bank. The information was not sought in response to an offer to purchase from either group of defendants being conveyed by Bradshaw on their behalf. At the time the statements were allegedly made, the defendants in each transaction had not even been contacted about buying the shares. Bradshaw could not have been acting in their employment or in furtherance of their business. Once the plaintiffs had decided to sell, Bradshaw went down his list and found purchasers for those shares at the price set by Frazier. Then Bradshaw and Citizens performed purely ministerial duties in completing the transaction. To hold that the Harbinsons and the Lingafelts were responsible as principals for Bradshaw's statements made as a bank employee to Frazier at Frazier's request and for Frazier's purposes and at a time before either group of defendants had been contacted about purchasing the Fraziers' stock is stretching the theory of agency beyond its bounds. Application of the agency relationship to this situation would be tantamount to holding the Harbinsons and the Lingafelts strictly liable for Bradshaw's statements under a theory of unjust enrichment.

{24} The facts are undisputed. They simply do not support a finding that Bradshaw could have been the agent for the defendants at the time and under the circumstances that he made the statements. The fact that Bradshaw later performed duties for both the sellers and buyers in completing the transactions cannot serve to bootstrap him into an agency position at the time the statements were made. The analysis of his status as an agent must be made at the time the statements creating the liability occurred. At that point, the defendants were not even in the picture, and Bradshaw was acting for his employer, Citizens.

{25} The general rule, followed in North Carolina, is that the liabilities of agents and their undisclosed principals are alternative liabilities, not joint or joint and several. When a third party becomes aware of the agency and the identity of the previously undisclosed principal, the third party is put to an election to hold either the agent or the principal liable. He cannot pursue both. *See Walston v. R.B. Whitley & Co.,* 226 N.C. 537, 540, 39 S.E.2d 375, 377 (1946); 3 Am. Jur. 2d *Agency* § 317, at 821 (1986). In this case, plaintiffs pursued a claim against the agent and obtained a settlement. They cannot now pursue the undisclosed principals.

{26} The motions for summary judgment of the Harbinsons and the Lingafelts with respect to the first three causes of action should be granted.

{27} It is therefore ORDERED, ADJUDGED, AND DECREED:

1. The Balkcums' motion for summary judgment is granted.

2. The motions for summary judgment of the Harbinsons and the Lingafelts are granted.

3. The claims of the plaintiffs against all defendants are dismissed with prejudice, and judgment is entered in favor of the defendants.

4. The costs of this action shall be taxed against the plaintiffs.

This 24th day of October, 1996.